# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Helen Irvin, : 
                 Petitioner :
  :
        v. : No. 1264 C.D. 2018
  : Submitted: September 9, 2019
Department of Human Services, :
               Respondent :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ROBERT SIMPSON, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY SENIOR JUDGE SIMPSON**           **FILED: October 9, 2019**

Helen Irvin (Mother), through her son, Mark J. Temons (Agent) petitions for review from an order of the Bureau of Hearings and Appeals (BHA) of the Department of Human Services (DHS) that dismissed his appeal as untimely. Based on the findings of an Administrative Law Judge (ALJ), the BHA determined Agent did not prove he was entitled to appeal *nunc pro tunc*, or "now for then," under DHS regulations in Chapter 275 of the Public Assistance Manual, specifically, 55 Pa. Code §275.3. More than 170 days past the deadline, Agent appealed the Lycoming County Assistance Office (CAO) decision deeming Mother ineligible for long-term care (LTC) benefits under Medicaid during a 14-month penalty period. The CAO imposed the penalty period because Mother transferred assets totaling over $143,000 for less than fair market value within the five-year look-back period. Agent asks this Court to reverse the BHA's dismissal, and to remand for a re-hearing on the merits. Upon review, we affirm.

## I. Background

In November 2014, Mother executed a power of attorney that appointed Agent to make financial decisions on her behalf. The power of attorney authorized Agent to exercise general control over Mother's financial affairs.

In March 2017, Mother entered Williamsport Home, an LTC facility. She then applied for Medical Assistance (MA)-LTC benefits through the CAO. ALJ Adj., 8/23/18, Finding of Fact (F.F.) No. 2. Mother appointed her daughter-in-law, Agent's wife (Wife), and the law firm of Raup & Sholder, P.C. in Williamsport, Pennsylvania (Law Firm) to represent her through the MA-LTC process. F.F. No. 3.

On November 20, 2017, the CAO issued a decision imposing a penalty period from May 1, 2017 through July 20, 2018, based on Mother's transfer of assets totaling $143,653.00 for less than fair market value (Notice). F.F. No. 5. During the penalty period, the Notice advised that Mother would need to pay the facility for the LTC services she received. The Notice was sent to Wife at the Williamsport address she provided to the CAO. A copy of the Notice was also sent to Law Firm.

Relevant here, the Notice stated: "<u>If you do not agree with this decision</u>, fill out the enclosed Fair Hearing form and mail or give it to your caseworker <u>by December 20, 2017</u>." Reproduced Record (R.R.) at 2a (emphasis added). None of Mother's representatives filed an appeal of the Notice by that date.

At that time, Agent resided out of the country, in Beijing, China. Although Agent resided in China for several years, he did not provide his address in China to the CAO. As such, Agent was separated from the day-to-day affairs in the United States, and he relied on family and friends to keep him informed, retrieve

2

mail, run errands and pay bills. Agent did not review the Notice until he returned to the United States in June 2018.

By letter dated May 25, 2018, Law Firm contacted the CAO advising of Agent's intention to file a late appeal. Agent signed a statement titled "Affidavit," dated June 2, 2018. The unverified statement was not notarized or sworn and did not indicate the truthfulness of its contents. It states in full:

> The undersigned, [Agent], does hereby state the following:
>
> - I am disabled according to Social Security definitions.
>
> - I live in China and have lived abroad for the past several years. Managing my personal and financial affairs can and is extremely difficulty [sic] from such a great distance.
>
> - I was not aware that I had the right to appeal because I did not understand the [N]otice or the time limits.

Certified Record (C.R.), Item No. 2.

Agent filed an untimely appeal of the November 20, 2017 Notice on June 8, 2018, indicating he could be reached at the Williamsport address. Agent offered no excuse other than his disability and lack of a reliable system to review and obtain mail sent to the Williamsport address. He also claimed he did not understand the Notice.

BHA held a telephonic hearing in August 2018. Agent, who was not represented by counsel, testified. Molly McKeown, Income Maintenance Caseworker Supervisor (Supervisor), and Theresa Manly, Income Maintenance Caseworker (Caseworker), testified on behalf of DHS. The ALJ allowed a brief pre-hearing

3

conference, during which Supervisor explained the review of Mother's financial documents to assess any transfers of $500 or more. ALJ Hr'g, 8/21/18, Notes of Testimony (N.T.) at 13. The review showed several transfers totaling $143,653.00, many checks written to "cash," without indicating the recipient. Without verification, she explained the sums are deemed transfers for less than fair market value.

Agent responded that documents were submitted to Law Firm, which should have submitted the verifications to Caseworker. Agent explained that one of the checks, for $50,000, was paid directly to the LTC home, and some of the other checks paid Mother's medical bills. Agent did not know why the medical bills were not forwarded to Caseworker. However, Caseworker noted most of the checks were written to "cash" which was why the CAO imposed the penalty period. N.T. at 17. Agent could not account for the whereabouts of large disbursements of cash. To the extent that Mother kept the cash to pay other expenses, then her financial resources would have exceeded eligibility limits for MA-LTC benefits in the first instance.

During the hearing, the ALJ advised Agent that if he proceeded with the hearing, one of the issues was "the appeal being filed untimely, the Notice was sent on November 20th, 2017 and the appeal was received on June 8th, 2018, that exceeds the 30 days for a timely appeal." N.T. at 36. The ALJ emphasized that the timeliness part of the hearing would determine his jurisdiction.

As to untimeliness, Agent admitted that he was trying to handle matters while out of the country, "and apparently, you know, I made mistakes." N.T. at 38. Significantly, he did not deny the Notice was sent to the proper address or identify any administrative breakdown responsible for the untimeliness. He cited only his own "mistakes" and noted he was disabled. Id.

4

Supervisor confirmed the Notice was mailed to Law Firm and to Wife at the Williamsport address. Wife completed the application. Supervisor also emphasized that Law Firm filed appeals regarding Mother in the past, so there should have been no misunderstanding as to the appeal rights. N.T. at 44-45.

Agent confirmed that Law Firm and his Wife were the proper representatives for the MA-LTC benefits application. N.T. at 41. He testified he was also on the record to be contacted with correspondence, but he acknowledged he was in Beijing at the time and did not expect to receive mail from the CAO in Beijing. N.T. at 42. He confirmed Wife was the proper person to whom the CAO should mail information related to the application. N.T. at 43.

Critically, when asked by the ALJ about the reason for untimeliness, Agent referred to the distance and difficulty in communicating because he was in Beijing. He also noted he had "never done anything like this before. And so I just, you know, didn't understand what was going on." N.T. at 45.

Initially, the ALJ held the record open to allow submission of exhibits regarding the merits. Ultimately, the ALJ closed the record without Exhibit A-2, (listing of checks from Santander Bank, 2015 to present) because he determined the appeal was untimely; therefore, he lacked jurisdiction over the merits.

BHA issued a Final Administrative Action Order on August 24, 2018, upholding the ALJ's decision. Agent sought reconsideration of the final order, which was denied. Agent, on Mother's behalf, timely petitioned for review.

## II. Discussion

On appeal,[1] Agent claims he did not know of his right to appeal, and that the CAO erred in imposing a penalty period. He contends he meets the criteria for appealing out of time under 55 Pa. Code §275.3(b)(3)(i). He argues the BHA's order should be reversed and asks this Court to direct the CAO to reschedule a hearing on the merits of the LTC penalty period imposed.

The sole issue before this Court is whether BHA erred in dismissing Agent's administrative appeal as untimely. Failure to timely appeal is a jurisdictional defect. H.D. v. Dep't of Pub. Welfare, 751 A.2d 1216 (Pa. Cmwlth. 2000). Therefore, "[t]he time for taking an appeal ... cannot be extended as a matter of grace or mere indulgence." J.C. v. Dep't of Pub. Welfare, 720 A.2d 193, 197 (Pa. Cmwlth. 1998).

There is no dispute that the appeal was filed 170 days after it was due based on the Notice. As it was clearly untimely, the only way that Agent's appeal could not be dismissed is if it met the standards for allowing a *nunc pro tunc* appeal.

"An appeal *nunc pro tunc* will be allowed only where the petitioner[']s delay was caused by extraordinary circumstances involving fraud, a breakdown in the administrative process, or non-negligent circumstances related to the petitioner, his counsel or a third party." C.S. v. Dep't of Pub. Welfare, 879 A.2d 1274, 1279

---

[1] Our review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with law and whether the necessary findings were supported by substantial evidence. Lancashire Hall Nursing & Rehab. Ctr. v. Dep't of Pub. Welfare, 995 A.2d 540 (Pa. Cmwlth. 2010).

6

(Pa. Cmwlth. 2005) (citing J.C., 720 A.2d at 197). Our Supreme Court held that an administrative breakdown occurs "where an administrative board or body is negligent, acts improperly or unintentionally misleads a party." Union Elec. Corp. v. Allegheny Cty. Bd. of Prop. Assessment, Appeals & Review, 746 A.2d 581, 584 (Pa. 2000). This Court defines non-negligent circumstances as those that are beyond an appellant's control. Ardolino v. City of Pittsburgh Civil Serv. Comm'n, 658 A.2d 847 (Pa. Cmwlth. 1995).

Importantly, the petitioner, Agent here, bears the burden of establishing that extraordinary circumstances, like fraud or an administrative breakdown, occurred to warrant relief from the appeal deadline. J.C., 720 A.2d at 197.

Despite the opportunity to address untimeliness at the ALJ's hearing, Agent submitted no evidence to support grounds for accepting his untimely appeal. Also, Agent provided no evidence regarding his diligence once he was aware of the need to file the appeal.

The appeal was filed 170 days late. It is undisputed that a copy of the Notice was sent to Wife at the proper address in Williamsport. A copy was also sent to Law Firm. Yet, no appeal was filed for six months. Agent offered no excuse for this delay. By way of explanation, Agent faulted others with failing to send him Mother's mail in a timely fashion. By way of excuse, Agent claimed he suffers from a disability (multiple sclerosis) and that those he relied upon to forward the mail include his son, who also suffers from an unspecified disability.

Relevant here, Agent does not identify any breakdown in the system or non-negligent reasons for the delay. Further, Agent does not argue that there was an administrative breakdown, or that he or Mother received misinformation. Agent's failure to arrange proper mail-handling on Mother's behalf while he was on an extended absence from the country is attributable to his own conduct, not that of DHS or the CAO. That Agent did not learn about the Notice until his return to the United States in June 2018 does not constitute grounds for *nunc pro tunc* relief.

In his *counseled* brief, Agent emphasizes that he "did not know he had the right to appeal because he did not understand the notice or the time limits." See Pet'r's Br. at 4, 5; see also R.R. at 3a (Law Firm letter to the CAO, 5/25/18).

In addition, Agent cites the wrong subsection of the DHS Public Assistance Manual pertaining to time limitations for an appeal in his brief. Pet'r's Br. at 4, 5. Indeed, he cites the provision that applies when the CAO fails to send written notice or commits administrative error, in 55 Pa. Code §275.3(b)(3).[2] However, the applicable provision is 55 Pa. Code §275.3(b)(1), which provides:

---

[2] Section 275.3(b)(3) provides in pertinent part:

When the [CAO], administering agency or service provider fails to send written notice which was required of the action and of the right of appeal or because of administrative error, ongoing delay or failure to take corrective action that should have been taken, the time limit in paragraphs (2) or (4) will not apply. For a period of 6 months from the date of the action or failure to act, the client shall have the right of appeal and shall exercise that right in writing. After 6 months from the date of the county office, administering agency or service provider action or failure to act, a written appeal may be filed with the agency provided that the client signs an affidavit stating the following:

   (i) The client did not know of his right of appeal or believed the problem was being resolved administratively.

8

(b) *Time limitations on right to appeal.* An applicant or recipient must exercise his right of appeal within the following time limits. Appeals which do not meet the following time limitations will be dismissed without a hearing:

(1) <u>Thirty days from the date of written notice of a decision or action</u> by a [CAO], administering agency or service provider…

55 Pa. Code §275.3(b)(1) (underlining added).

Here, it is undisputed that the CAO sent the Notice, and the Notice contains the 30-day appeal deadline. There is no indication that the CAO provided misinformation to Agent. Thus, subsection (b)(3), which allows an additional 6 months when misinformation is provided, is not triggered. See <u>Trant v. Dep't of Pub. Welfare</u>, 452 A.2d 590 (Pa. Cmwlth. 1982) (remanding when caseworker provided misinformation).

Agent bore the burden of proving either fraud, an administrative breakdown or other non-negligent circumstances. <u>J.C.</u> Agent did not meet that burden here because he provided no evidence regarding anything but his own "mistakes" in handling the situation. N.T. at 38. Further, Agent did not meet his burden to establish diligence in filing the appeal once he learned about it, showing the elapsed period was of a short duration, and that DHS was not prejudiced by the delay. <u>J.C.</u>

(ii) The client actually believes the county office erred in its actions.

(iii) The appeal is being made in good faith. Appeals which do not meet the time limitations and requirements set forth in this paragraph and in paragraphs (1) and (2) will be dismissed without a hearing.

55 Pa. Code §275.3(b)(3).

### III. Conclusion

For the foregoing reasons, we affirm the BHA's order. <u>See,</u> <u>e.g.</u>, <u>Camerino v. Dep't of Human Servs.</u> (Pa. Cmwlth., No. 125 C.D. 2016, filed Sept. 18, 2017), 2017 WL 4103458 (unreported)[3] (dismissing untimely appeal pursuant to Section 275.3(b)(1) of the Public Assistance Manual, 55 Pa. Code §275.3(b)(1)).

_____
ROBERT SIMPSON, Senior Judge

---

[3] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Helen Irvin,                         :

               Petitioner        :

                         :

       v.                      :   No. 1264 C.D. 2018

                         :

Department of Human Services,    :

            Respondent   :

# **O R D E R**

**AND NOW**, this 9th day of October 2019, the order of the Department of Human Services, Bureau of Hearings and Appeals is **AFFIRMED**.

_____
ROBERT SIMPSON, Senior Judge